DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Zvonko Sarlog, | ) | |
| | ) | CASE NO. 1:07 CR 434 |
| Petitioner-Defendant, | ) | (Civil Case No. 1:08 CV 2544) |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent-Plaintiff. | ) | |
| | ) | |

## I.  Introduction

The petitioner seeks habeas relief from his conviction and sentence pursuant to 28 U.S.C.

§ 2255.  *See* Docket No. 164.  The government has filed a response in opposition.  *See* Docket

No. 170.

The petitioner entered pleas of guilty to counts 1 and 36 in the superseding indictment

which charged in count 1 with conspiracy to distribute and possess with the intent to distribute

cocaine, in violation of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(A), and in count 36, conspiracy

to launder money, in violation of 18 U.S.C. § 1956(h).  The Court sentenced the defendant on

March 5, 2008 to 121 months on each of the above counts and to run concurrently with each

other.  The Court found the defendant's total offense level to be 34 and a criminal history

category I which called for an advisory guideline range of 151 months to 181 months.  The Court

granted the defendant a downward variance with the above-described sentence.

The petitioner's pro se motion alleges three reasons for habeas relief as follows:

        A.      Petitioner was wrongfully, illegally, and unconstitutionally
                     enhanced by a misapplication of the advisory guidelines

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

which increased his sentence for a managerial role pursuant to §3B1.1 (U.S.S.G.).  Petitioner' [sic] counsel was ineffective.

B.    Petitioner was denied an evidentiary hearing with witnesses to refute his involvement as a manager in the conspiracy, as a result of ineffective assistance of counsel.

C.    Petitioner's counsel failed to file a Notice of Appeal despite the Defendant/Petitioner's direct request to retained counsel to do so; which resulted in a denial of Petitioner's Sixth Amendment right to effective assistance of counsel in asserting his statutory right to appeal.

## II.  The Guideline Calculation

Paragraphs 38 through 48 of the presentence report describe the total offense level for the defendant at 34.  His criminal history category is I which provides for a sentencing range of 151 to 188 months.   Paragraphs 38 through 48 follow:

**Base Offense Level:** The United States Sentencing Commission Guideline for violation of 21 U.S.C. § 846, 841(a)(1) and 18 U.S.C. § 1956 is found in U.S.S.G. § 2D1.1(c)(4).  According to the Offense Conduct section, this defendant's criminal activity involved more than 5, but less than 15 kilograms of cocaine. The offense level specified in the **Drug Quantity Table** under U.S.S.G. § 2D1.1(c)(4), sets a Base Offense Level of 32.                                             <u>32</u>

**Specific Offense Characteristic:** None.                    <u>0</u>

**Adjustments for Role in the Offense:** Pursuant to U.S.S.G. § 3B1.3, the offense level is increased by two.  The defendant abused  a position of trust in committing this offense.                                       <u>+3</u>

**Adjustment for Obstruction of Justice:** None.        <u>0</u>

2

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

| | |
|---|---|
| **Adjusted Offense Level: (Subtotal):** | **37** |
| **Adjustment for Acceptance of Responsibility:** Pursuant to U.S.S.G. § 3E1.1(a), the offense level is reduced by two. | **-2** |
| Pursuant to U.S.C.G. § 3E1.1(b), the government intends to ask that the offense level be reduced one additional level. | **-1** |
| **Adjusted Offense Level:** | **34** |
| **Chapter Four Enhancements:** None. | **0** |
| **Total Offense Level:** | **34** |

The primary thrust of the petitioners 'motion is the calculation of the advisory guidelines, that he was denied the effective assistance of counsel at the sentencing evidentiary hearing, and in his counsel's failure to file a direct appeal.

### III.  The Relevant Portions of the Plea Agreement Executed by the Petitioner

A close examination of the plea agreement, as well as the hearing during which the Court accepted the petitioner's guilty plea, leads to the conclusion that the petitioner was facing a mandatory minimum sentence of 120 months unless he qualified for application of the safety valve.

Selected portions of the plea agreement follow:

Paragraph 3 of the plea agreement stated:

> 3.  Count 1 of the superseding indictment charges the defendant with conspiracy to possess with the intent to distribute and distribution of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, §§841(a)(1) and (b) (1)(B), and

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

846 of the United States Code.  The defendant understands that based upon the amount of drugs he conspired to possess with the intent to distribute and distributed in Count 1, that is, more than five kilograms but less than 15 kilograms, of cocaine, the statutory penalty for Count 1 is a mandatory period of 10 years up to life imprisonment, a $4,000,000.00 fine, or both, and a mandatory period of at least 5 years of supervised release.  Count 36 of the indictment charges conspiracy to launder money in violation of Title 18, United States Code, Section 1956(h).  The maximum statutory penalty for that offense is 20 years imprisonment, a $500,000 fine and three years of supervised release.  The defendant understands that, if he violates the terms and conditions of his supervised release, he can be subjected to an additional period of incarceration.

Paragraph 8 of the plea agreement stated:

For purposes of determining the defendant's statutory penalty and advisory imprisonment range under the United States Sentencing Guidelines, the defendant and government agree and stipulate that the amount of cocaine possessed with the intent to distribute and distributed in Count 1 is more than five kilograms but less than 15 kilograms, of cocaine, which corresponds to a base offense level of 32.  U.S.S.G. §2D1.1.  At sentencing, the government will argue that the defendant should receive a three-point enhancement for managerial role under Guideline §3B1.1(b) and a two-point enhancement for abuse of position of trust under Guideline §3B1.1.  At sentencing, the defendant will oppose those enhancements and is free to argue that neither enhancement applies.  The parties agree that no other Guideline adjustments to the base offense level apply.  *At sentencing, the defendant will argue that he is eligible for "safety valve" treatment under § 5C1.2 of the Sentencing Guidelines.*  The government will oppose "safety valve" treatment and is free to argue, at time of sentencing, that any of the criteria of § 5C1.2 have not been satisfied.  The parties agree that Counts 1 and 36 of the superseding indictment group within the meaning of § 3D1.2(b) of the Sentencing Guidelines.  The government will not argue for a sentence higher than the advisory Sentencing Guidelines range, as calculated by the Court.  (Emphasis added)

4

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

Paragraph 13 of the plea agreement stated:

> 13. Defendant acknowledges having been advised by counsel of
> defendant's rights, in limited circumstances, to appeal the
> conviction or sentence in this case, including the appeal right
> conferred by 18 U.S.C. § 3742, and to challenge the conviction or
> sentence collaterally through a post-conviction proceeding,
> including a proceeding under 18 U.S.C. § 2255. The defendant
> expressly waives those rights except as reserved below. Defendant
> reserves the right to appeal: (a) any punishment in excess of the
> statutory maximum; (b) any sentence to the extent it exceeds the
> maximum of the sentencing range determined under the advisory
> Sentencing Guidelines in accordance with the sentencing
> stipulations and computations in this agreement, using the
> Criminal History Category found applicable by the court. Nothing
> in this paragraph shall act as a bar to the defendant's perfecting
> any legal remedies he may otherwise have on appeal or collateral
> attack pertaining to claims of ineffective assistance of counsel or
> prosecutorial misconduct.

Paragraph 17 of the plea agreement set forth the factual basis to support the defendant's

guilty plea.

> 17. The defendant agrees that if this matter were to proceed to
> trial, the United States could prove the following facts beyond a
> reasonable doubt, that these facts accurately outline his readily
> provable offense conduct and specific offense characteristics:
>
> > A. From on or about November 1, 2006 and
> > continuing through July 22, 2007, in the Northern
> > District of Ohio, Eastern Division, ZVONKO
> > SARLOG conspired with Ljubomire Rkman, Oliver
> > Gemmell III, John Ciarlillo, Kenneth Wayne Tate,
> > and others known and unknown to possess with the
> > intent to distribute a mixture or substance
> > containing a detectable amount of cocaine, a
> > Schedule II narcotic drug controlled substance in
> > violation of Title 21, United States Code, Sections
> > 841(a)(1) and (b)(1)(B) and 846. The amount of
> > cocaine which SARLOG conspired to distribute and

5

(1:07 CR 434
Civil Case No. 1:08 CV 2544)

possess with intent to distribute exceeded five kilograms but was less than 15 kilograms of cocaine.

B.  Overt acts of ZVONKO SARLOG, defendant herein, which do not include each and every fact concerning defendant SARLOG, are as follows:

1.  In November 2006, co-defendant Ljubomire Rkman purchased two kilograms of cocaine and had a person deliver the cocaine to the Northern District of Ohio, where defendant SARLOG took possession of one of the kilograms of cocaine and stored it at his home.

2.  In January 2007, Ljubomire Rkman purchased two kilograms of cocaine and had a person deliver the cocaine to the Northern District of Ohio, where defendant SARLOG took possession of part of one of the kilograms of cocaine.

3.  On May 18, 2007, ZVONKO SARLOG took $23,000 from (unbeknownst to SARLOG) an FBI undercover agent for the purpose of having Ljubomire Rkman purchase one kilogram of cocaine for the undercover agent.

4.  On May 18, 2007, ZVONKO SARLOG, KENNETH WAYNE TATE and at least two other persons took steps to have money delivered from the Northern District of Ohio to Ljubomir Rkman in the El Paso, Texas area for the purpose of purchasing cocaine.

6

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

5.  On May 21, 2007, ZVONKO SARLOG and Ljubomir Rkman had a telephone conversation in which they discussed, in coded language, the purchase of three kilograms of cocaine.

6.  On May 25, 2007, however, Ljubomir Rkman called ZVONKO SARLOG and, in coded language, told SARLOG that Rkman's courier had been interdicted with the three kilograms of cocaine (referred to as "three Cuban cigars") at the Texas-Mexico border.

7.  On June 8, 2007, ZVONKO SARLOG had a telephone conversation with Ljubomir Rkman in which, in coded language, SARLOG asked if there were "news" on his "girlfriend" (cocaine). Rkman responded that SARLOG's girlfriend did not love him anymore (i.e., Rkman did not have any cocaine).  In substance, SARLOG then asked Rkman what SARLOG should tell the (unbeknownst to SARLOG) undercover agent; Rkman said SARLOG should tell him what Rkman had just told SARLOG.

8.  In June, 2007, ZVONKO SARLOG and others, including but not limited to John Ciarlillo and Oliver Gemmel, engaged in a scheme to sell marijuana so that the monetary proceeds of the marijuana sales could be sent to Ljubomir Rkman for the purpose of purchasing more cocaine.

7

(1:07 CR 434
Civil Case No. 1:08 CV 2544)

9.  On June 29, 2007, Rkman and
SARLOG had a coded telephone
conversation in which Rkman said
the Cubans were coming through but
were talking a minimum of "5."
When Rkman said he was talking
96/98 (percentage purity), SARLOG
responded, "so my girlfriend
(cocaine) is pretty?"

10.  After substantial delay in
obtaining the marijuana sales money,
SARLOG and others forwarded
money to Ljubomir Rkman in the El
Paso, Texas area for the purpose of
purchasing cocaine.  Oliver Gemmel
drove money in a truck to Rkman.  A
close relative of defendant Jonathan
Trepp flew in an airplane to deliver
money to Rkman.  SARLOG sent
$7,500 to Rkman and defendant
David Tyler sent over $4,000 to
Rkman.

11.  On July 18, 2007, SARLOG and
Rkman had a telephone conversation
in which Rkman, in coded language,
told SARLOG that two kilograms of
cocaine were being purchased.
Rkman said that his "girlfriend" has
a "friend."  After SARLOG said,
"her and her friend," Rkman
responded, "yeah."

12.  On July 21, 2007, Oliver
Gemmel was alone in a truck bound
from the Southern District of Texas
to the Northern District of Ohio
when he was stopped by Indiana
State Police and 2,033 grams of
cocaine hydrochloride was found in

8

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

Gemmel's truck.

13.  On July 21, 2007, after Gemmel had told Rkman during a telephone conversation that Gemmel had been stopped by law enforcement authorities, Rkman called SARLOG, saying, "when was the last time you cleaned your house?"  After SARLOG replied, "not too long ago," Rkman said, "do it again" and "make it spotless."

14.  Shortly after midnight on July 22, 2007, Rkman and SARLOG had a telephone conversation in which Rkman told SARLOG he was "90-95%" sure that one of the boys (Gemmel) "tripped and fell."  After SARLOG asked if he has a lot to say, Rkman responded, "probably."  When SARLOG asked if his "girlfriend" (cocaine) was with him (Gemmel), Rkman said that there were a "couple" with her.  SARLOG replied, "f-king great."

15.  Less than an hour later on July 22, 2007, Rkman and SARLOG had a telephone conversation in which RKMAN told SARLOG, "it's been confirmed" and "you know what that means."

16.  On the morning of July 22, 2007, Rkman and SARLOG had another telephone conversation in which SARLOG confirmed that he had "cleaned" his house and had spread the word a little bit.  After Rkman said, "that's good; that's

9

(1:07 CR 434
Civil Case No. 1:08 CV 2544)

what I wanted you to do," SARLOG
responded that it was a big shame
that the "girlfriends" (two kilograms
of cocaine) were with him.

C.  The defendant acknowledges that the above outline of his
conduct does not set forth each and every fact that the government
could prove beyond a reasonable doubt, nor does it encompass all
of the acts which he committed in furtherance of the offense to
which he is pleading guilty.

### IV.  The Transcript of the Defendant's Guilty Plea Revisited

The transcript of the defendant's guilty plea is Docket No. 169, and is 45 pages in length.

By the time the Court had reviewed the guilty plea agreement, it was apparent to the Court that

the defendant was looking at a mandatory minimum sentence of 120 months, unless he were to

qualify for application of the safety valve.

The Court specifically addressed the defendant during the guilty plea hearing regarding

the possibility of safety valve treatment after reading from the guilty plea agreement at paragraph

8 and stating:

THE COURT: ... At sentencing, the defendant will argue that he is
eligible for safety valve treatment under Section 5C1.2 of the
sentencing guidelines.

The government will oppose safety valve treatment and is free to
argue at the time of sentencing that any of the criteria of 5C1.2
have not been satisfied.  Now, I think I also have in that stack of
papers I gave you a discussion concerning the safety value and
that's – you will see it's Section 5C1.2, pages 394 and 395.  Do
you have those pages in front of you?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Now, a defendant, to be eligible for the safety

10

(1:07 CR 434
Civil Case No. 1:08 CV 2544)

valve, must establish all five of the requirements and I want to read those to you. It starts at page 394. Do you have that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Number one says the defendant does not have more than one criminal history point as determined in the sentencing guidelines before application of subsection B and 4A1.3 departure is based upon adequacy of criminal history.

So if you – I gather from what I've heard here in the past that there's no indication this defendant has any criminal history?

MR. MILLER[1]: That's true. We are not aware of any, but the plea agreement provides that the probation officer --

THE COURT: Well, I understand that, but right now, there isn't any indication that this defendant has any criminal history points?

MR. MILLER: Right. He's likely a Criminal History I, Your Honor.

THE COURT: Okay. Next requirement, the defendant did not use violence or credible threats of violence or possess a firearm or a dangerous weapon, or induce another participant to do so in connection with the offense. That's the second requirement. Do you see and understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm not asking today for what the positions of parties are. I just want to make sure you know what the elements are.

The third element, the offense did not result in death or serious bodily injury to any person. <u>Fourth, the defendant not an</u>

---

[1]The court reporter inadvertently referred to Bernard Smith, the AUSA in charge of the prosecution, as Mr. Miller. That mistake was repeated until later in the transcript when the AUSA is identified as Mr. Smith.

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

> organizer, leader or manager of supervisor of others in the offense
> as determined under the sentencing guidelines and was not
> engaged in a continuing criminal enterprise and I gather that this is
> an area that the government intends to contest? (Emphasis added)
>
> MR. MILLER: Yes, Your Honor.  If this court were to find that the
> defendant had an aggravating role under 3B1.1, that would exclude
> him under this provision from safety valve.[2]

Later on during the same guilty plea hearing, the Court reviewed the calculation of the

advisory guideline range with the petitioner as follows:

> THE COURT: Okay.  Well, the consequence of the safety valve is
> if it's found to exist, then it takes – that the court no longer is
> obliged to sentence the defendant to the mandatory minimum, but
> as I understand is, what, a two-level reduction for safety valve.  Is
> that the max of the guidelines?
>
> MR. MILLER: Right, Your Honor.  Yes.
>
> THE COURT.  So you got a paper and pencil here so make sure
> you can follow this, Mr. Sarlog.
>
> As I understand it, you start with 32, and then if things go against
> you and the court adds three levels for role in the offense and two
> levels for abuse of trust, you are up to 37.  Would you agree?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And then if there's – I assume there's going to be
> no opposition to a three-level reduction for acceptance of
> responsibility as long as the defendant continues to accept
> responsibility?
>
> MR. MILLER: True.
>
> THE COURT: So you subtract three, so it looks to me then, as I

---

[2]*See* Docket No. 169, p.24, line 9 through p. 26, line 12.

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

understand it, you would be a 34, and if you're Criminal History
Category I, then the range is 151 to 188 months.  Do you see that?

THE DEFENDANT: Yes, Your Honor.[3]

During the guilty plea hearing, the Court also reviewed with the petitioner paragraph 13

of the plea agreement.  Paragraph 13 stated:

13.  Defendant acknowledges having been advised by counsel of
defendant's rights, in limited circumstances, to appeal the
conviction or sentence in this case, including the appeal right
conferred by 18 U.S.C. §3742, and to challenge the conviction or
sentence collaterally through a post-conviction proceeding,
including a proceeding under 28 U.S.C. §2255.  The defendant
expressly waives those rights except as reserved below.  Defendant
reserves the right to appeal: (a) any punishment in excess of the
statutory maximum; (b) any sentence to the extent it exceeds the
maximum of the sentencing range determined under the advisory
Sentencing Guidelines in accordance with the sentencing
stipulations and computations in this agreement, using the
Criminal History Category found applicable by the court.  Nothing
in this paragraph shall act as a bar to the defendant's perfecting
any legal remedies he may otherwise have on appeal or collateral
attack pertaining to claims of ineffective assistance of counsel or
prosecutorial misconduct.

The Court then addressed the petitioner in the following discussion concerning the

waiver:

THE COURT: Now, there's a little more into this agreement that I
want to review with you.  Turn, if you would, to page 5, paragraph
13.  Are you there?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It said waiver of appeal, defenses and collateral

---

[3]*See* Document No. 169, p. 27 through p. 28, line 12

13

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

attack rights. Do you see that?

THE DEFENDANT; Yes.

THE COURT: You understand waiver means to give up?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: All right. Now, before we read this, I just want to
have your attention on what is normally available to a defendant
who's been convicted and sentenced, how may he or she attack, if
you will, the conviction and the sentence if they're interested in
doing so. And there really are two avenues open to a defendant.
The first is called a direct appeal.

And in that situation, the defendant has to promptly file a notice of
appeal, point out the errors made by the trial court, the district
court such as myself, either with respect to the conviction or the
sentence.

The fact that you've pled guilty would seem to me to limit it to the
sentence as opposed to the conviction, but you still have a right to
challenge on direct appeal the sentencing. A second avenue that's
open to a defendant is normally after the appeal rights have gone
by or after the conviction to sentence has been affirmed, is to file a
collateral proceeding, sometimes called post-conviction action.
You may be familiar from your work as a police officer that
defendants in state court would sometimes file for a post-
conviction relief in state court.

In any event, that's a phrase that's often used in state court, and it
means sometimes post-conviction or sometimes is called –
described as a petition for a habeas corpus relief. In any event,
that's the second.

Now, that this paragraph 13 does is ask you to give up most, but
not all, of those rights of direct appeal and a collateral attack. Do
you understand?

THE DEFENDANT: Yes, sir, Your Honor.

14

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

THE COURT: Now, once you have saved yourself as described, so if you go down now four or five lines on paragraph 14, you will see where the defendant expressly waives those rights, meaning your right to direct appeal or collateral attack except as reserved below.  The defendant reserves the right to appeal any punishment in excess of the statutory maximum.  Statutory maximum here is – I don't know.  Was it 40 years or life or whatever?

MR. MILLER: Right.

THE COURT: So it means I would have to go above that, which this isn't going to happen, but it's in here to protect you, because sometimes I have a brain lag and would sentence you to the statutory maximum.  What's more important is what it says under B, any sentence to the extent it exceeds the maximum sentencing range determined under the advisory sentencing guidelines in accordance with the sentencing stipulations and computations in this agreement using the criminal history found applicable by the court.

Now, it's my understanding here's what it means.  Let's assume now that at the time of sentencing, we have a dispute as to whether you should get three levels for role in the offense.  I say yes.  You've reserved the right to challenge that appeal, or let's say I find that if we add two levels for abuse of a position of trust, you reserved your right to challenge that on appeal, or let's say I find you you're not involved – you are not entitled to the safety valve, you are entitled to challenge that on appeal.  So you've reserved a number of challenges here based on how the guideline calculation is eventually determined by me.  Do you understand?

THE DEFENDANT: Yes, Your Honor.[4]

### V.  The Petitioner's  Claims for Relief

The petitioner's first two claims for relief attack the calculation of the advisory guideline

range in arguing that the offense level should not have been increased for his managerial role and

---

[4]*See* Docket No. 169, p. 31, line 16 through p. 35, line 11.

15

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

that he was denied an evidentiary hearing on that issue.

Initially, the Court observes that the petitioner was not sentenced within the advisory

guideline range, so the addition of three levels for his managerial role did not play any role in his

sentence of 121 months.  Moreover, the Court conducted an extensive sentencing hearing on

February 27, 2008.  The transcript numbers 129 pages.  So, the petitioner was not denied an

evidentiary hearing and the petitioner had the opportunity to present evidence.

At the conclusion of the sentencing hearing, the Court announced its ruling which

included a downward variance as it stated:

> The guideline calculation with the offense level 34, criminal
> history category I is 151 to 188 months.
>
> Had I determined that there should be no addition of two levels for
> abuse of position of trust, it would have changed the guideline to
> 32, with 121 to 151 months.
>
> If in fact on appeal the Court of Appeals should decide that I was
> wrong and should have granted the two levels, or should have
> taken away those two levels, and sends it back to reconsider, I
> would be at 121 to 151 months.
>
> I think I correctly calculated the guidelines at 151 to 188 months.
> But that's subject to superior judgment of the judges that sit in the
> Court of Appeals who may have the opportunity to review my
> sentence.
>
> But it's the Court's conclusion that at the level 34, with 151
> months as the minimum, that that is under all the conditions,
> excessive when I consider the defendant's background, all the
> materials that have been submitted to me that are lengthy, when I
> consider the sentences received by the other defendants, and in
> particular Rkman.
>
> And when I consider the fact that the defendant was a police

16

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

officer, and I take all that into consideration, it's my view that the appropriate sentence in this case is 121 months in prison, with supervised release for a period, I suppose, of three years.

And I tell everybody if the circuit decides I was wrong and sends it back to me to take two levels off and make the offense level 32, I'm still going to say 121 months.

So I say that simply to forecast the future, assuming I'm still around here, if and when that comes back.[5]

The Court then covered the issue of an appeal in the following exchange:

THE COURT: ...  One thing I do have to tell your client is that he has the right to file a notice of appeal.  and I think he must file the notice of appeal within ten days after our entry goes on.  What's I'm not certain about, and maybe Mr. Smith can tell me because he's the resident genius around here, if they do not file a notice of appeal, do you still have the right to file a notice of appeal afer their time has gone by?  Because I thought you had 60 days.

MR. SMITH: Yes, Your Honor. The government always in a criminal case does have 30 days.

THE COURT: 30 days, all right.

MR. SMITH: and then --

THE COURT: If they don't file a notice of appeal and then you file one, do they have the right to file one behind you, or are they stuck?

MR. SMITH; I'm looking that up right now, Your Honor.

THE COURT: Okay.  That's my question.

MR. SMITH: Your Honor, I'm referring to Federal Rule of Appellate Procedure 41, time for filing of notice of appeal in a

---

[5]*See* docket No. 168, p. 120, line 15 through p. 121, line 20.

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

criminal case.

In a criminal case a defendant's notice of appeal must be field in the District Court within ten days after the later of the entry of the judgment, or the other being appealed, or the filing of the government's notice of appeal.

THE COURT: Okay.

MR. SMITH: So he would have ten days after a government notice of appeal to file, if there were one.

THE COURT: All right.  Well, I thought was important to touch on that because it's possible that you will both decide that the ruling is going to withstand appellate review and you don't want to waste your time filing a notice of appeal.  But that's up to you all. I'm not trying to rule on that.  But I wanted Mr. Sarlog to know that if he decides not to appeal initially, and then they decide to file an appeal because they want to take an exception to the variance – that's the only thing you lost here is the variance – then he's got the right within ten days after their notice of appeal to file a notice of appeal.

Do you follow me, Mr. Sarlog?

THE DEFENDANT: I think so, Your honor.[6]

The petitioner did not file an appeal.  The government did not file an appeal objecting to the downward variance.

The Court agrees with the government's reliance on *United States v. Watson*, 165 F.3d 486, 488-89 (6th Cir. 1999) for the proposition that the petitioner's waiver in paragraph 13 of the guilty plea agreement procedurally bars him from arguing in his collateral attack that the Court erred in determining the applicable advisory guideline range.  Specifically, the petitioner waived

---

[6]*See* document No. 168, page 126, line 16 through p. 128, line 8.

18

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

that collateral attack, unless the Court sentenced the petitioner to punishment in excess of the

statutory maximum (which in the petitioner's case was 40 years), or sentenced the defendant to a

term of imprisonment that exceeded the maximum of the advisory Sentencing Guideline range,

which was either 188 months before the variance decision or 151 months after the variance

decision.

Secondly, the petitioner's substantive claims that he should not have been assessed a role

in the offense enhancement and an abuse of trust enhancement under the Sentencing Guidelines

are procedurally barred because Sentencing Guideline calculation issues are not cognizable on

collateral attack. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996) and *Jones v. United*

*States,* 178 F.3d 790, 796 (6th Cir. 1999).

The petitioner did reserve in his guilty plea agreement the right to seek relief on direct

appeal or in a collateral proceeding based on the ineffective assistance of counsel.  The petitioner

wastes his efforts in this context in arguing that he should not have been assessed the add-ons in

calculating his offense level.  In so arguing, the petitioner continues to ignore the obvious.  He

was subject to a mandatory minimum sentence of 120 months, unless he was successful in

earning the safety valve.  He failed.  The petitioner does not contend that he should have been

granted the safety valve which then resulted in the necessity for the Court to sentence the

petitioner to a sentence of 120 months.

## VI.  A Review of the Petitioner's Reply (Document No. 171)

The petitioner has filed a nine page reply.  In the prayer of the reply reads as follows:

1. GRANT the 28 U.S.C. § 2255 Motion and Resentence the

19

(1:07 CR 434
Civil Case No. 1:08 CV 2544)

> Defendant without enhancements for § 3B1.1 (Managerial
> role);and § 3B1.3 (Abuse of Trust); and, at a base level of Level 28
> with with [sic] reduction for Acceptance of Responsibility; and, in
> consideration of <u>Kimbrough</u> and <u>Gall</u> under 18 U.S.C. § 3553(a).
>
> 2.  APPOINT counsel for the purposes of these proceedings.
>
> 3.  DENY the Government's opposition.

The Court, again, repeats the obvious. The petitioner remains oblivious to the fact that the lowest sentence that he could receive, absent eligibility for the safety valve, was 120 months. The Court is of the view that the petitioner has simply forgotten the impact of the guilty plea agreement and the fact that he was facing at least 120 months once he entered a plea of guilty, unless he was able to demonstrate eligibility for the safety valve. The petitioner continues to contest the final calculation of the advisory sentencing guideline range, but the issues relating to the calculation of the advisory guideline range were subsumed in the Court's granting of the variance reducing the sentence to 121 months.

### VII. Conclusion

After review of the superseding indictment, the guilty plea agreement, the transcript of the hearing when the petitioner entered a plea of guilty to counts 1 and 36 and the transcript of the sentencing hearing, the Court finds absolutely no basis for an argument that had his lawyer not denied him the effective assistance of counsel, he would have received a sentence of 120

20

(1:07 CR 434
 Civil Case No. 1:08 CV 2544)

months rather than the pronounced sentence of 121 months.

Consequently, the petition for habeas relief is denied and the Court will not issue a

certificate of appealability.


IT IS SO ORDERED.


  December 22, 2008                          /s/ David D. Dowd, Jr.
Date                                      David D. Dowd, Jr.
                                          U.S. District Judge